Argued and submitted August 31, reversed and remanded
for a new trial December 21, 1981, reconsideration allowed,
former opinion modified, reversed and remanded for further
proceedings (56 Or App 1, 640 P2d 1043) February 16, 1982

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS GEORGE,
*Appellant.*

(No. 37488, CA A20757)

637 P2d 1305

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for assault in the second degree.[1] He argues that, in ruling on his objection to the testimony of a witness on the basis of a violation of Oregon's criminal discovery statute,[2] the court erred by not inquiring as to the occurrence of and reason for such violation. The state admits that the judge erred in failing to make such an inquiry, but argues that the error was harmless. We disagree.

On the evening of September 6, 1980, the victim, Dr. Buchanan, attended a concert with his wife. Due to an asthma attack, he left in the middle of the concert and drove, by himself, to an ice cream parlor. He thought that ice cream might help relieve the asthma. He parked his car on the street near the parlor and started walking on the sidewalk toward the building.

Buchanan testified that he had a "vague recollection" of being "forced backward" as he passed a group of people walking in the opposite direction, when defendant, a

---

[1] ORS 163.175 provides:

"(1) A person commits the crime of assault in the second degree if he:

"(a) Intentionally or knowingly causes serious physical injury to another; or

·"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

"(2) Assault in the first degree is a Class A felony."

[2] ORS 135.815(1) provides:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control: ·

"(1) The names and addresses of persons whom he intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

ORS 135.865 provides:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

member of the group, ran into him with his chest. He described defendant's attitude as "very hostile." He recalled next being involved in an altercation in a parking lot adjacent to the sidewalk. He remembered saying that he did not want to fight. He could not recall defendant saying anything specifically. His next recollection was waking up on the ground. He testified that he assumed he had been hit more than one time. When he awoke, he saw defendant and another man standing above him. He then saw defendant and his companion coming toward him with weapons that looked like clubs. Buchanan remembered waking up once again from an unconscious state. He again assumed, without remembering specific blows, that he had been hit. When he awoke the second time, Buchanan saw a group of several girls, in addition to defendant and his companion. One of the girls was encouraging the group to disperse. He then passed out again.

When Buchanan again awoke, he found that he was bleeding. He stumbled to a nearby parking lot, where he found officers of the Corvallis Police Department. He told them that he was trying to talk a man out of a fight when he was struck in the head with what he believed was a club. He confronted and identified defendant, who was then in custody, as his assailant.

Corvallis Police Officer Gunter had already encountered defendant near the scene. Defendant's clothes were covered with blood, and he was staggering. When Gunter approached him, defendant fled but was later apprehended by Officer Cooksley. Cooksley testified that defendant was intoxicated. Investigations at the scene produced only two pieces of wood, which appeared to be the remnants of a single, club-like object, as possible weapons.

Buchanan testified that, as a result of the blows, he continued to suffer from retrograde amnesia at the time of the trial. He also testified that, on the day he was attacked, he had taken four different types of medicine for treatment of asthma and high blood pressure. On that afternoon, he had consumed one or two alcoholic drinks; he also had drunk one beer before leaving the concert center.

Terry Gibson, an eyewitness, testified that she saw defendant and Leonard Ortega, his companion, remove a

club and a tire iron from the trunk of the car in which defendant and the rest of the group had arrived. She said they took the weapons across the street to the parking lot, where she saw defendant strike Buchanan with a tire iron. She testified that Ortega did not strike Buchanan. Gibson added that the next day she saw Ortega's sister, Anita, recover the tire iron from some bark mulch in a nearby parking lot. On cross-examination, Gibson admitted that she had been drinking on the night of the assault. She also testified that she once was involved in an intimate relationship with Ortega.

Officer Cooksley testified that he spoke with Terry Gibson at the hospital emergency room immediately following the assault. He also testified that Gibson told him that Leonard Ortega was beating a man with a club and that defendant was kicking and hitting him. Gibson did not, at that time, say anything to Cooksley about defendant being armed with a weapon.

The state also called as a witness Paul Polasek, who was with defendant and Ortega before the assault occurred. Polasek testified that he saw defendant bump into a man near the ice cream parlor on the night Buchanan was assaulted and that he thought the bump was accidental. He testified that he then moved to the corner of the block. He said he thought he remembered Ortega walking over to the car but claimed he did not see and could not remember anything else about the incident. Earlier, Polasek had given a far more complete description of events to Cooksley. At trial he professed to recall very little.

The state also called Daniel Polasek, Paul Polasek's father, apparently to explain why the younger Polasek claimed to recall so little of the incident. After Mr. Polasek stated his name and his relation to Paul Polasek, defendant raised the following objection:

"[COUNSEL]: Your Honor, I'm going to object to any testimony on behalf of this witness. We were not afforded an opportunity of notice by the state to know that he was going to be testifying today. I think that violates all normal rules of discovery. I do think that it may very well be prejudicial to the defendant's case for denying us an opportunity to interview him prior to this hearing."

The judge overruled the objection without inquiry, and the elder Mr. Polasek testified that his son had expressed fear of Ortega and defendant, that he had received numerous calls from unknown individuals inquiring as to his son's testimony at trial, that his son had recently been assaulted and that he believed that assault was related to his son's testimony. It is the judge's ruling on Mr. Polasek's testifying which is defendant's sole assignment of error.[3]

As the state concedes, on defendant's objection to Mr. Polasek's testimony, the trial court should have inquired into the alleged discovery violation. *State v. Addicks,* 28 Or App 663, 560 P2d 1095, *rev den* (1977). In *Addicks,* the defendant objected to the introduction of certain photographs, arguing that the pictures had not been provided in pre-trial discovery. The trial court denied the objection without comment. We stated:

> "This appears to us to constitute an exercise of will rather than an exercise of judgment and accordingly constituted an abuse of discretion. An initial determination as to whether defendant was in fact given discovery of the pictures and the prejudice he might have suffered as a result should have been made." 28 Or App at 669.

In *Addicks,* we reversed and remanded for further proceedings. The trial court committed an identical error in this case.

The state argues that the error was harmless, citing *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973). There the court held that a reviewing court may affirm despite error if 1) there was substantial and convincing evidence of guilt, and 2) the error committed was unlikely to have changed the result of the trial. 266 Or at 25-26.

As the foregoing extensive description of the evidence in this case shows, neither of the *Van Hooser* criteria is present here. The state's key witnesses, Buchanan and Gibson, were both subject to impeachment—Buchanan because his memory was understandably hazy, Gibson because she was drinking and because she might be biased in favor of Ortega.

---

[3] Defendant does not separately assign error to the admission of the *contents* of Mr. Polasek's testimony.

The elder Mr. Polasek's testimony was likely to affect the result of the trial. Defendant neither admitted nor denied the act. He testified he was too intoxicated to recall the incident. He argued that someone else may have struck Buchanan with the weapon. Mr. Polasek's claim that someone had threatened and assaulted his son because his son planned to testify as a witness for the state in defendant's trial could have led the jury to conclude that defendant was the person who had intimidated Paul Polasek. The jury could then reasonably infer from the fact that defendant harassed the younger Polasek that defendant was conscious of his own guilt.

Reversed and remanded for a new trial.